401 F.2d 371
 Antonio BUECHOLD, a minor, represented by Henry M. Jonas,
Guardian ad litem, Plaintiff-Appellant,
v.
Antonio ORTIZ, Defendant-Appellee.
Carola KOMETER, a minor, represented by Henry M. Jonas,
Guardian ad litem, Plaintiff-Appellant,
v.
Jose V. CASTRO, Defendant-Appellee.
 Nos. 21472, 21473.
 United States Court of Appeals Ninth Circuit.
 Oct. 1, 1968.
 
 1
 Henry M. Jonas (argued), San Francisco, Cal., for appellant.
 
 
 2
 No appearance for appellees.
 
 
 3
 Before HAMLEY and MERRILL, Circuit Judges, and CROCKER, District judge.
 
 CROCKER, District Judge:
 
 4
 The District Court dismissed these two cases without an appearance by the appellees on the basis that it lacked jurisdiction to hear them, and granted leave to appeal in forma pauperis, pursuant to Section 1915 of Title 28 of the United States Code. This court has jurisdiction of the appeals under the provisions of Title 28, Section 1291, of the United States Code. The sole issue presented by both cases is whether a United States District Court has original jurisdiction of cases involving paternity and child support brought on behalf of a German citizen against a citizen of California.
 
 
 5
 In both cases Henry M. Jonas was duly appointed Guardian ad litem, and the minor is the illegitimate offspring of an illicit relationship between a German woman and a member of the United States Armed Forces stationed in Germany. The one distinguishing factor, which does not affect the decision here, is that in the Buechold suit a final judgment establishing paternity and ordering child support was rendered by a German court against Antonio Ortiz. In addition, appellant Buechold prays for an upward modification of the child support award as the amount now due under the terms of the German decree is less than $10,000.
 
 
 6
 Appellants contend that the 1956 Treaty of Friendship, Commerce and Navigation between Germany and the United States confers original jurisdiction of these actions upon the Federal Courts. This treaty grants to the citizens of Germany the same right of access to the Courts of the United States as is given United States Citizens under the Constitution and laws of the United States. (See Articles III, VI and XXV of the Treaty of Friendship, Commerce and Navigation in U.S. Treaties and Other International Agreements, Vol. 7, Part 2, page 1839.) These actions did not arise under treaties of the United States within the meaning of 28 U.S.C. 1331, as the treaty gives access to the courts and does not create a right to child support.
 
 
 7
 Thus, only if a United States citizen could maintain these actions for paternity and child support in a federal court could appellants maintain them. It has been held that even though there is diversity of citizenship and a sufficient amount in controversy to satisfy the technical jurisdictional requirements, the federal courts have no jurisdiction of suits to establish paternity and child support. Albanese v. Richter (CCA 3rd, 1947), 161 F.2d 688, cert. denied 332 U.S. 782, 68 S.Ct. 49, 92 L.Ed. 365. Furthermore, it is well recognized that the federal courts must decline jurisdiction of cases concerning domestic relations when the primary issue concerns the status of parent and child or husband and wife. Barber v. Barber, 21 How. 582, 62 U.S. 582, 16 L.Ed. 226; In re Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500; Simms v. Simms, 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115; De La Rama v. De La Rama, 201 U.S. 303, 26 S.Ct. 485, 50 L.Ed. 765; State of Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489; Williams v. State of North Carolina, 325 U.S. 226, 65 S.ct. 1092, 89 L.Ed. 1577; Calhoun v. Lange, (D.Md.1941), 40 F.Supp. 264; Linscott v. Linscott, (S.D.Iowa, 1951), 98 F.Supp. 802; Bercovitch v. Tanburn, (S.D.N.Y.1952), 103 F.Supp. 62; Morris v. Morris, (CCA 7th, 1960), 273 F.2d 678; Gullo v. Hirst, (CCA 4th, 1964), 332 F.2d 178; Brandtscheit v. Britton, (N.D.Cal., 1965), 239 F.Supp. 652; Druen v. Druen, (D.Col., 1965), 247 F.Supp. 754; and In re Freiberg, (E.D.La., 1967), 262 F.Supp. 482. As Justice Holmes said in State of Ohio ex rel. Popovici v. Agler, supra: 'It has been understood that, 'the whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States."
 
 
 8
 Thus, although appellants are citizens of Germany and appellees are citizens of the State of California, and the prayer is for more than $10,000, exclusive of interest and costs, the District Court properly declined jurisdiction.
 
 
 9
 There are many criteria to be considered in child support cases, such as the standard of living, employment and wages of the father, most of which are intimate to the parties and dependent upon the particular conditions existing in the area where the parties reside. State courts deal with these problems daily and have developed an expertise that should discourage the intervention of federal courts. As a matter of policy and comity, these local problems should be decided in state courts. Domestic relations is a field peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts.
 
 
 10
 It is most significant that appellants made no attempt to obtain relief in the California state courts, although there exist specific statutory remedies. Appellants contend that they are barred from seeking a remedy in the state courts due to the provisions of section 1030 of the California Code of Civil Procedure. However, it has been held that this security for costs provision may be waived by the court where the plaintiff is an indigent and entitled to relief under the in forma pauperis doctrine. Bank of America National Trust & Savings Association v. Superior Court of Fresno County (1967), 255 A.C.A. 674, 63 Cal.Rptr. 366. Meade County Bank v. Bailey,137 Cal. 477, 70 P. 297, cited by appellant, was a suit by a foreign corporation and did not involve an indigent, or suit in forma pauperis. Thus, this section does not deprive the appellants of due process or equal protection of the laws at least until the California state courts refuse to waive the section for them.
 
 
 11
 Under the provisions of Section 1915 of the California Code of Civil Procedure, the judgment and order of the German court in the Buechold case is accorded the same recognition in California as it would receive in Germany. Where there is a cause of action to establish paternity and obtain child support, as in the Kometer case, California Civil Code Section 196a, enacted in 1913, sets forth the obligation of the putative father for the support of the illegitimate child. In addition, this section provides the illegitimate offspring with the same enforcement rights and remedies that are afforded a legitimate child under section 137, 137.5, 138, 139 and 140 of the California Civil Code.
 
 
 12
 Such a long standing and comprehensive statutory scheme manifests the States' abiding concern for the welfare of illegitimate children. Because of these factors this court feels that the State of California is particularly equipped to dispose of such suits and their courts should not be circumvented.
 
 
 13
 For the reasons outlined above this court holds that the decision of the lower court in the Kometer case was proper because it is primarily a domestic relations suit to establish status. The court also upholds the decision of the lower court in the Buechold case which is a suit to enforce a foreign judgment. Although there was diversity in the latter case, the amount due under the German decree was far less than the $10,000 jurisdictional requirement. If more than the jurisdictional minimum had been due on this German judgment, a different result may have been reached, as then it would be a suit for money only and would not involve a determination of the difficult domestic relations questions of paternity and child support. However, in requesting modification of the German decree in order to reach the jurisdictional amount of $10,000, the suit becomes one for domestic relations and status, and not merely for money due on a foreign judgment.
 
 
 14
 Refusing original diversity jurisdiction of these paternity and child support actions does not mean that the Supreme Court would decline review of a state court decision in this area if a constitutional issue were raised in the state court proceeding. While it is the business of the state to decide who is the father and how much he shall pay as child support, if the administration by the state is so unreasonable as to amount to a denial of due process or of the equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States, certiorari to the Supreme Court is available.
 
 
 15
 In reaching our decision we distinguish the recent case of Spindel v. Spindel (D.C.N.Y.1968), 283 F.Supp. 797. That case was an attack on the validity of a Mexican divorce decree rather than a suit to establish status.
 
 
 16
 The decision of the District Court in both cases if affirmed.